Filed 11/14/22  P. v. Frye CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B313885 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A044084) |
| v. | |
| ROBERT DENNIS FRYE, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, James D. Otto, Judge.  Affirmed.

David Y. Stanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Blythe J. Leszkay and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Robert Dennis Frye, convicted in 1989 of first degree murder, appeals the denial of his petition for resentencing pursuant to Penal Code section 1172.6 (former section 1170.95)[1] after the superior court found, beyond a reasonable doubt, that Frye could still be convicted of felony murder under amended section 189, subdivision (e)(3), as a major participant in the underlying robbery who had acted with reckless indifference to human life. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Robbery and Shooting*

At approximately 11:00 p.m. on June 10, 1989, Duncan Anderson, an employee of a national pharmacy chain, was shot and killed during a robbery while Anderson and two of his fellow employees were depositing the local pharmacy's daily receipts at a local bank. The evidence at trial, which included Frye's description of his involvement in the crimes to his friend Frank Forman and Forman's brother Robert, established that Frye gave a loaded handgun to Danny Pluckett and drove Pluckett on his motorcycle to a bank in Long Beach. Frye then rode to the nearby pharmacy and waited until he saw Anderson and two other employees leave with the day's receipts. Frye returned to the bank and told Pluckett the employees were coming. Frye then drove around the corner and waited.

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6 with no substantive change in text. (Stats. 2022, ch. 58, § 10.)

All further statutory references are to the Penal Code.

2

At the bank Pluckett robbed one of the employees of the money she was carrying. Anderson pursued Pluckett, attempting to apprehend him. Pluckett shot Anderson. Frye, who could not see what was happening outside the bank, heard two or three sounds he described to Robert Forman as sounding like fire crackers. Pluckett then ran up to Frye where he was waiting, and the two men fled the scene on Frye's motorcycle.

Frank Forman, who described Pluckett as his best friend, acknowledged that he had worked at the specific pharmacy that was the target of the robbery and conceded on cross-examination that he and Pluckett had discussed how the store's employees carrying receipts for deposit could be robbed.

Frye was charged in an information filed October 10, 1989 with a single count of murder (§ 187, subd. (a)) with the further allegation that during the commission of the offense a principal was armed with a firearm (§ 12022, subd. (a)). At trial Frye's jury was instructed, as pertinent to the pending appeal, with CALJIC Nos. 3.01, regarding aiding and abetting liability; 8.10, defining murder;[2] 8.21, defining first degree felony murder based on a robbery; and 8.27, explaining first degree felony murder as

---

[2]     As modified by the court, CALJIC No. 8.10 stated, "Defendant is accused in the information of having committed the crime of murder, a violation of Penal Code Section 187. [¶] Every person who unlawfully kills a human being during the commission or attempted commission of robbery is guilty of the crime of murder in violation of Section 187 of the Penal Code. [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A human being was killed. [¶] 2. The killing was unlawful, and [¶] 3. The killing occurred during the commission or attempted commission of robbery."

applied to an aider and abettor in the underlying robbery.  The jury was not instructed on express malice or premeditation.

The jury found Frye guilty of first degree murder and found true the firearm enhancement allegation.  The court sentenced Frye to an aggregate indeterminate state prison term of 26 years to life.  We affirmed Frye's conviction on appeal.  (*People v. Frye* (Apr 19, 1991, B049144) [nonpub. opn.].)

2. *Frye's Petition for Resentencing*

On February 4, 2019 Frye, representing himself, filed a petition for resentencing pursuant to former section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings.  Frye checked boxes on the printed form petition to establish his eligibility for resentencing relief, including the boxes stating he had been convicted under a felony-murder theory and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437).  The superior court appointed counsel to represent Frye and, following briefing by the People and Frye's appointed counsel, found Frye had made a prima facie showing of his entitlement to relief and issued an order to show cause, setting the matter for an evidentiary hearing.

Frye, who was out of custody on parole, attended the June 28, 2021 hearing by video conference, waiving his right to be present in the courtroom. At the outset of the hearing the court noted the People had submitted with a supplemental brief a compact disc that included the clerk's and reporter's transcripts from Frye's trial and this court's 1991 opinion affirming the judgment.  Both sides submitted on the record of conviction; no additional evidence was presented.

4

Argument at the hearing focused on whether Frye was guilty of felony murder under amended section 189, subdivision (e), as a major participant in the underlying robbery who had acted with reckless indifference to human life. The prosecutor emphasized that Frye had participated in the planning of the robbery and provided the loaded gun to Pluckett. As the crime unfolded, Frye alerted Pluckett when the employees were leaving for the bank, waited nearby for Pluckett to commit the robbery and then acted as the getaway driver despite hearing gunshots. For his part, Frye's counsel conceded Frye had helped plan the robbery and provided the firearm, but argued there was no evidence Frye knew Pluckett had a history of violent behavior or that the gun would be used other than to scare the victims. He also asserted Frye was waiting on his motorcycle a substantial distance from the shooting (40 yards) and there was no evidence Frye knew there was a victim he could have helped rather than flee the scene.

After taking the matter under submission, the superior court issued a written order denying Frye's petition, finding the People had proved beyond a reasonable doubt that Frye was both a major participate and had acted with reckless disregard for human life.[3] The court analyzed the evidence as it related to each of the six factors identified by the Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) for assessing whether a defendant had been a major participant in the underlying felony and the five factors identified in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) for evaluating whether the defendant had acted with reckless indifference, emphasizing in particular that Frye had

---

[3] The court found the People had not proved their alternate theory that Frye acted as an aider and abettor with intent to kill.

planned the robbery, acted as the coordinator and provided the loaded firearm to his codefendant. The court also found "[t]he circumstantial evidence was that he must have heard the gunshots but remained to facilitate the getaway," leaving the scene immediately without providing any aid to the victim. The court acknowledged the only evidence of Frye's awareness that his codefendant was likely to kill was that he gave the loaded gun to Pluckett to use to commit the robbery.

Frye filed a timely notice of appeal.

## DISCUSSION

1. *Section 1172.6 (Former Section 1170.95)*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957.) At the time of Frye's trial in 1989, section 189 permitted a conviction for felony murder by imputing malice to a participant in an inherently dangerous felony, including robbery, that resulted in a homicide. (*People v. Chun* (2009) 45 Cal.4th 1172, 1184; see *Strong*, at p. 704.) As amended by Senate Bill 1437, section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder except under the revised felony-murder rule as set forth in section 189, subdivision (e). That provision requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual

6

killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)). (See *Strong*, at p. 708.)

Senate Bill 1437 also authorized, through former section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of Senate Bill 1437's changes to the definitions of the crime. (See *Strong*, *supra*, 13 Cal.5th at p. 708; *People v. Lewis*, *supra*, 11 Cal.5th at p. 957; *People v. Gentile*, *supra*, 10 Cal.5th at p. 843.) As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2), effective January 1, 2022, these ameliorative changes to the law now expressly apply to attempted murder and voluntary manslaughter.

When, as here, a petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).) At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony.

(§ 1172.6, subd. (d)(3).) The petitioner and the prosecutor may also offer new or additional evidence. (*Ibid.*)

As originally enacted former section 1170.95, subdivision (d)(3), provided, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." Senate Bill No. 775 amended former section 1170.95, subdivision (d)(3), to provide, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. . . . A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

The superior court's decision to deny the petition after an evidentiary hearing, if the proper standard and burden of proof were applied, will be affirmed if supported by substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 985 (*Ramirez*).)

8

2. *The* Banks/Clark *Factors*

The overlapping factors for assessing whether a defendant was a major participant in an underlying serious felony and acted with reckless indifference to human life for purposes of section 190.2, subdivision (d), and thus for section 189, subdivision (e)(3), were identified by the Supreme Court in *Banks, supra,* 61 Cal.4th 788 and *Clark, supra,* 63 Cal.4th 522, and reiterated more recently in *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*). (See generally *Strong, supra,* 13 Cal.5th at pp. 705-707 [summarizing the substantial clarification of the law governing findings under section 190.2, subdivision (d), made by *Banks* and *Clark*].) As to whether the defendant was a major participant in one of the specified felonies, the *Banks* Court listed the following factors: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks,* at p. 803, fn. omitted.)

As to whether a defendant acted with reckless indifference to human life, the Supreme Court enumerated the following factors: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim?

9

What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins, supra*, 9 Cal.5th at p. 677; accord, *Clark, supra*, 63 Cal.4th at pp. 618-622.) "'"[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient."'" (*Scoggins*, at p. 677; accord, *Banks, supra*, 61 Cal.4th at p. 803.)

As the *Scoggins* Court explained, "Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*Scoggins, supra*, 9 Cal.5th at p. 676; accord, *Banks, supra*, 61 Cal.4th at p. 808 ["[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient"; reckless indifference to human life requires "knowingly creating a 'grave risk of death'"].) "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'" (*Scoggins*, at pp. 676-677, quoting *Clark, supra*, 63 Cal.4th at p. 617.)

### 3. *Substantial Evidence Supports the Superior Court's Denial of Frye's Petition*

There can be no doubt substantial evidence supported the superior court's finding Frye was a major participant in the robbery of the pharmacy employees, Frye's argument to the contrary notwithstanding. As Frye's counsel conceded at the section 1172.6, subdivision (d)(3), hearing, the evidence at trial established that Frye assisted in planning the robbery. In

10

addition, on the day of the robbery he was the central figure in coordinating the attack—transporting Pluckett to the planned location of the robbery, staking out the pharmacy, notifying Pluckett when the employees were on their way to the bank and waiting nearby to act as the getaway driver. In addition, it is undisputed that Frye provided the loaded handgun used by Pluckett. Frye argues, although he provided the gun, there is no evidence he was aware the robbery would involve the lethal use of force: He argues (without evidentiary support) the gun was only intended as a threat. But Frye knew the weapon he provided was loaded and also knew Pluckett would be confronting three employees without any backup. It is a reasonable inference Pluckett recognized the gun might be fired to enable Pluckett to steal the money and make a safe escape, creating a far greater danger of a life-threatening act by Pluckett than generally inherent during a robbery. Finally, although Fry was not directly at the scene and likely could not have prevented the shooting once the robbery was underway, he was close by. Frye told Robert Foreman he heard sharp sounds, like a firecracker, immediately before Pluckett returned and the men fled. Yet Frye did not inquire what had happened, let alone go to the bank where Anderson had been shot to render assistance.

This same evidence amply supported the additional finding that Frye acted with reckless indifference to human life in aiding Pluckett commit the robbery of the pharmacy employees. He played a major role in facilitating the robbery after providing the actual perpetrator with a loaded handgun and knew Pluckett would be outnumbered when accosting the pharmacy employees with the gun. Frye made no effort to minimize the risk of violence during the robbery and then fled with Pluckett after

11

hearing what he reasonably should have recognized as gun shots without inquiring whether Pluckett had shot any of the robbery victims. Even though there was no evidence Frye intended that any of the pharmacy employees be killed, substantial evidence supported the superior court's ultimate finding that he was willing to assist Pluckett in killing to achieve the aim of the robbery. (See *Clark, supra*, 63 Cal.4th at p. 617.)

Frye's reliance on *People v. Ramirez, supra*, 71 Cal.App.5th 970 and this court's conclusion substantial evidence did not support a finding of reckless indifference to human life in that case is misplaced. In *Ramirez* we explained the petitioner, who was 15 years old at the time of the attempted carjacking that resulted in the shooting death of the driver as he attempted to flee, "did not provide the murder weapon, instruct his confederate to shoot, or know of his confederate's propensity toward violence, and the shooting occurred quickly without Ramirez having a meaningful opportunity to intervene." (*Id*. at p. 975.) We also observed it was one of Ramirez's confederates "who instigated and planned the carjacking" (*id*. at p. 988), and there was evidence Ramirez participated in the crime because he feared he would be killed by fellow gang members if he did not (*id*. at p. 988). Finally, we emphasized Ramirez was a juvenile at the time of the offense: "A juvenile's immaturity and failure to appreciate the risks and consequences of his or her actions bear directly on the question whether the juvenile is subjectively "'aware of and willingly involved in the violent manner in which the particular offense is committed'" and has 'consciously disregard[ed] "the significant risk of death is or her actions create.""" (*Id*. at p. 991.)

In contrast to the petitioner in *Ramirez,* as discussed, Frye actively (and willingly) participated in the planning and coordination of the robbery and provided the loaded handgun for Pluckett to use during the crime. Although Frye was a young man in 1989, unlike Ramirez he was not a juvenile. As the Attorney General argues, although Frye's youth is properly taken into consideration, it cannot outweigh all other factors. (See *People v. Mitchell* (2022) 81 Cal.App.5th 575, 595 ["We ascribe meaning to Mitchell's actions despite his age. Youth can distort risk calculations. Yet every 18 year old understands bullet wounds require attention. The fact of youth cannot overwhelm all other factors"].) Those factors here were more than enough to support the superior court's findings.

## DISPOSITION

The postjudgment order denying Frye's petition for resentencing is affirmed.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

13